UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
ALBANY DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL NO. 08-749 (GLS) |
| Plaintiff, | |
| | Speedy Trial Act exclusion: |
| | 18 U.S.C. §3161(h)(1)(F) |
| v. | Time excludable: from the date of the filing of this motion through the conclusion of any hearing or |
| THOMAS SPARGO, | other prompt disposition of the motion |
| Defendant. | |

**UNITED STATES' MOTION TO DISQUALIFY DEFENSE COUNSEL
OR, IN THE ALTERNATIVE, FOR A <u>CURCIO</u> CONFLICT HEARING**

The United States, by its attorneys, Richard C. Pilger and M. Kendall Day, moves the Court to disqualify the defendant Thomas Spargo's counsel - E. Stewart Jones - from representing Spargo in the instant case. Mr. Jones has first-hand knowledge of some of the facts underlying this case, and it is that knowledge which compels us to seek disqualification. In the alternative, we ask this Court to conduct a <u>Curcio</u> hearing during which time the defendant would be provided with conflict free counsel in order to address whether the defendant waives this conflict.

The criminal charges in this case arise from repeated attempts by then Judge Spargo to extort a $10,000 payment from an attorney practicing before him. From November 13 through December 19, 2003, defendant Spargo - directly and through others - made at least three attempts to secure $10,000 from Ulster County attorney Bruce Blatchly towards a fund set up to cover Judge Spargo's legal expenses. Roughly six days before Judge Spargo first solicited a $10,000 payment from Mr. Blatchly, defense counsel Mr. Jones made a $10,000 payment to the defendant's fund.

For the reasons set forth in the accompanying brief, the government respectfully requests that Mr. Jones be disqualified from serving as an attorney in this matter. Defense counsel is a witness to several disputed facts in this case, including the circumstances of his own $10,000 payment to the defendant as well as prior statements by one of the defendant's intermediaries. As such, he could serve as either an actual sworn witness through his testimony or as an unsworn witness through his examination of witnesses or his statements and arguments to the jury. Moreover, the integrity of the proceedings require us to guard against any future claim by Spargo that defense counsel's representation of Spargo was irrevocably tainted by his involvement in the underlying conduct.

The Court has a duty to disqualify defense counsel if necessary to protect the integrity of the judicial process, both by ensuring that the trial is conducted within the ethical standards of the profession and by ensuring that the proceeding appears fair to all who observe it. Wheat v. United States, 486 U.S. 153, 160 (1988); see also United States v. Locascio, 6 F.3d 924, 935 (2d Cir. 1993). Accordingly, the government brings this motion in light of its responsibility to raise with the Court the possibility that defense counsel has a conflict of interest "at the earliest possible moment." United States v. Malpiedi, 62 F.3d 465, 470 (2d Cir. 1995); see also United States v. Levy, 25 F.3d 146, 152 (2d Cir. 1994) (when the case was reassigned to a new judge, the prosecutor who had raised a conflict issue before the original judge should have advised the new judge as well).

For the reasons set forth above, as supported by the attached brief, the United States asks that its motion be granted. In addition, the United States asks that the Court set this matter for a

hearing.  By letter dated January 6, 2009, defense counsel advised that he would not consent to this motion and withdraw.

                                          Respectfully submitted,

                                          WILLIAM M. WELCH II
                                          CHIEF
                                          PUBLIC INTEGRITY SECTION

                                           s/ M. Kendall Day
                                          Richard C. Pilger, Senior Trial Attorney
                                          M. Kendall Day, Trial Attorney
                                          Public Integrity Section
                                          U.S. Department of Justice
                                          1400 New York Ave, NW Suite 12100
                                          Washington, DC 20005
                                          202-514-1412
                                          (F) 202-514-3003
                                          richard.pilger@usdoj.gov
                                          m.kendall.day@usdoj.gov

Date: January 21, 2009

## **MEMORANDUM OF LAW - TABLE OF CONTENTS**

I. BACKGROUND ................................................................. 1

    A. Spargo Solicits $10,000 After a Conference with Blatchly .................. 1

    B. Defense Counsel Testifies as a Sworn Witness at Commission Hearing ....... 2

II. ARGUMENT ................................................................... 3

    A. Defense Counsel Has A Potential Conflict Based on
His Conversations with Rosenblum .................................... 4

    B. Defense Counsel Has a Potential Conflict as
an Unsworn Witness to Disputed Facts ................................ 5

    C. Spargo May at a Later Date Thrust Defense Counsel Into
an Actual, Unwaivable Conflict Based on a Claim That
Defense Counsel was a Joint Participant in Criminal Activity ............... 7

III. CONCLUSION ................................................................. 8

**BRIEF IN SUPPORT OF UNITED STATES' MOTION TO DISQUALIFY
OR, IN THE ALTERNATIVE, FOR A <u>CURCIO</u> CONFLICT HEARING**

**I.     BACKGROUND**

In 2001, Defendant Thomas J. Spargo was elected as a State Supreme Court Justice in Albany, New York.  On January 25, 2002, defendant Thomas J. Spargo was formally accused by the New York State Commission on Judicial Conduct (the "Commission") of a variety of ethical transgressions.  As part of his defense, Spargo brought a federal suit, claiming that the Commission's charges and rules infringed on his First Amendment free-speech rights.  As a result of his defense of the Commission's initial charges, as well as his prosecution of the federal suit, Spargo's legal bills began to mount.

In May 2003, a legal defense fund was established to defray Spargo's mounting legal bills.  As of November 1, 2003, Spargo's legal bills exceeded $140,000.  To that date, the only contribution which had been made to the legal defense fund was a $1,000 payment by Spargo's mother which was used to fund the account when it was first opened.

By business check dated November 7, 2003, defense counsel paid $10,000 to Spargo's defense fund.  Aside from the contributions by Mr. Jones and Spargo's mother, only one other person ever made a contribution to the defense fund, that person being an attorney who made a $200 contribution by check dated November 21, 2003.

    A.     <u>Spargo Solicited $10,000 After a Conference with Blatchly</u>.

Six days after defense counsel made a contribution, on November 13, 2003, in the course of a day of status conferences for cases in Ulster County, New York, Spargo solicited a contribution to his defense fund from a plaintiff's attorney (and Town Judge), Bruce Blatchly.  Mr. Blatchly had a tort and matrimonial practice, and had approximately twelve cases pending before Spargo at the time, including two on Spargo's calendar that day.

Blatchly will testify that, on November 13, 2003, at the close of one of Blatchly's status conferences, Spargo privately asked him to contribute $10,000 to Spargo's legal defense fund. According to Blatchly, Spargo stated that he did not intend to make a general appeal for contributions to the fund, but was targeting three specific lawyers who appeared in Ulster County court often - Blatchly, Maureen Keegan, and Al Mainetti, none of whom ultimately contributed.

From November 13 through December 19, 2003, Spargo had additional conversations with Blatchly which increased the pressure on Blatchly to contribute $10,000. A friend of Spargo - Sanford Rosenblum - also served as an intermediary for Spargo, asking Blatchly for a $10,000 contribution to Spargo's defense fund on December 11, 2003.

      B.    <u>Defense Counsel Testified as a Sworn Witness at Commission Hearing</u>.

In late December 2003 and January 2004, the Commission began taking the sworn and transcribed statements of various witnesses to Blatchly's allegations regarding Spargo's solicitation. During this period, Spargo was represented by a different attorney, David Kunz.

On January 27, 2004, Mr. Jones gave a transcribed, sworn statement as a witness. Mr. Jones testified that his contribution to the legal defense fund was solicited by Sanford Rosenblum. (Jones Dep. at 3-4). He also testified that he never spoke to Spargo about the legal defense fund. (<u>Id.</u> at 8). Finally, Mr. Jones testified that he could not recall ever appearing before Spargo while Spargo was a judge, nor could he recall ever having any cases on Spargo's calendar, nor could he recall his firm having any pending cases before Spargo, either at the time of the $10,000 payment or in the succeeding two months before Mr. Jones' testimony. (<u>Id.</u> at 10).

After his sworn statement as a witness, but prior to the adversarial Commission hearings, Spargo substituted counsel and made Mr. Jones his attorney for purposes of the Commission's disciplinary hearings. In August 2005, Mr. Jones testified at the Commission hearing as a witness for the Commission. Mr. Jones testified in a manner consistent with the testimony he had given in January 2004. Given that he was also counsel for Spargo, Mr. Jones cross-examined himself.

## II.     ARGUMENT

"A defendant's right to counsel under the Sixth Amendment includes the right to be represented by an attorney who is free from conflicts of interest." United States v. Kliti, 156 F.3d 150, 153 (2d Cir. 1998). Moreover, while an individual has a qualified right to be represented by counsel of his choosing, that right may be outweighed by the "independent interest [federal courts have] in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." Wheat v. United States, 486 U.S. 153, 160 (1988). As a result, district courts faced with evaluating a conflict enjoy "substantial latitude" to disqualify a defense attorney, even where the defendant attempts to waive the conflict and allow counsel to continue. United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993).

Conflicts of interest divide into two categories: (1) potential conflicts of interest, which arise if the interests of the defendant may place the attorney under inconsistent duties at some time in the future; and (2) actual conflicts of interests which arise when, during the course of representation, a defendant's interests diverge with respect to a material fact, a legal issue, or a course of action. United States v. Kliti, 156 F.3d at 153, n.3.

### A. Defense Counsel Has A Potential Conflict Based on His Conversations with Rosenblum.

As summarized above, the government's evidence will include testimony by Blatchly regarding a December 11, 2003, solicitation from Spargo's friend (Rosenblum) to contribute $10,000 to Spargo's defense fund. Blatchly will testify that Rosenblum solicited the payment by saying "we" are looking for $10,000 from you. Based on this and other evidence, the government will seek admission of Rosenblum's statements based in part on their status as statements by a coconspirator in furtherance of a conspiracy to commit extortion.

At the Commission hearing, Spargo testified that he never authorized or directed Rosenblum to ask another lawyer for money on Spargo's behalf. (Hearing Test. at 499). Spargo further testified that he never knew that Rosenblum made a request of any lawyer for a contribution of any kind to Spargo or to a legal defense fund on his behalf. (Id.).

Spargo's denials - and the government's ability to introduce them as statements of the defendant even if Spargo chooses not to testify in this proceeding - place into dispute the conversations Rosenblum had with others about contributing $10,000. Rosenblum's conversations with Mr. Jones regarding Mr. Jones' payment and the judge's knowledge of Rosenblum's efforts are directly relevant to that issue.

Defense counsel's potential conflict exists in his inability to serve as a witness regarding whether Rosenblum's December 11th solicitation of Blatchly was unconnected with Spargo. The New York Code of Professional Responsibility forbids an attorney from "act[ing] ... as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client...." N.Y. Disp. Rule

4

5-102A. Although the Code sets out several exceptions to this general rule, none appear to apply here.[1]

The conflict is only a potential one at this time because it is unclear whether the interests of the defendant will evolve to include Mr. Jones' testimony, thereby placing Mr. Jones under inconsistent duties at some time in the future. If Spargo calls Rosenblum as a witness, and he is impeached by the government, then Spargo may be able to call Mr. Jones as a witness to Rosenblum's prior consistent statements. See Fed.R.Evid. 801(d)(1)(B).

### B. Defense Counsel Has a Potential Conflict as an Unsworn Witness to Disputed Facts

Even if Spargo could at this early date knowingly waive for all time his ability to call defense counsel as a sworn witness, defense counsel could still be placed in the position of serving as an unsworn witness. An attorney acts as an unsworn witness when he has first-hand knowledge of the events presented at trial. Locascio, 6 F.3d at 933. The defendant can be disadvantaged by an attorney with first-hand knowledge of events, because that attorney "may be constrained from making certain arguments ... because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client." Locascio, 6 F.3d at 933. The government and the court can be disadvantaged as well because the defense attorney may gain an unfair advantage as an unsworn witness by "subtly impart[ing] to the jury his first-hand

---

[1] Assuming that the fairness of the proceedings was not otherwise implicated, there is one exception to the Disciplinary Rules which would allow Mr. Jones to serve as an advocate and a witness. That exception is available if disqualification "would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case." N.Y. D.R. 5-102A(4). Courts, however, have narrowly construed the availability of this exception, expressly concluding that the costs of retaining substitute counsel cannot alone constitute a substantial hardship. United States v. Kwang Fu Peng, 766 F.2d 82, 87 (2d Cir. 1985).

knowledge of the events without having to swear an oath or be subject to cross examination." Locascio, 6 F.3d at 933.  See also United States v. Kwang Fu Peng, 766 F.2d 82, 86 (2d Cir. 1985) ("If [defense counsel] had continued as counsel without taking the stand, the jury might well have interpreted his questions or summation as testimony conveying his own version of [disputed facts]." ); United States v. Cunningham, 672 F.2d 1064, 1075 (2d Cir. 1982) ("Since as an unsworn witness [defense counsel] would not be subject to cross examination or explicit impeachment, the interest sought to be protected by the Disciplinary Rules would be even more seriously eroded than if [defense counsel] appeared as a sworn witness." ).  Accordingly, while a defendant may waive conflicts which disadvantage him, a defendant cannot waive conflicts which disadvantage either the government or the integrity of the fact-finding process for which the Court bears responsibility.  Locascio, 6 F.3d at 934.

Here, it is readily apparent that Mr. Jones could serve as an unsworn witness.  Should Spargo decide to call Rosenblum, Mr. Jones would be an unsworn witness to conversations Rosenblum had with others in an effort to raise money for Spargo.[2]

---

[2]There is another way in which Mr. Jones could serve as an unsworn witness.  One element which the government must establish to prove a violation of 18 U.S.C. § 1951 is that the payment sought by Spargo had a potential affect on interstate commerce.  To satisfy this element, the government will use a depletion-of-assets theory.  In other words, we will show at trial that (1) Blatchly would have used a business account for the $10,000 payment to Spargo; and (2) that Blatchly's business account was otherwise used to buy goods that traveled in interstate commerce (such as computers, printers, and Westlaw legal research services).

The government should be allowed to introduce evidence that another attorney (Mr. Jones) who also had had cases before Spargo had contributed $10,000 just days before Spargo's first solicitation of Blatchly.  Such evidence strongly corroborates the depletion-of-assets proof of the interstate commerce element.  Accordingly, the government may seek to introduce both Mr. Jones' $10,000 check to Spargo's fund as well as the electronic court records showing that Mr. Jones had had two cases in front of Spargo in 2002 and 2003.  Mr. Jones' first-hand knowledge of his payment could lead to him serving as an unsworn witness about that payment during opening or closing argument.

    C.    <u>Spargo May at a Later Date Thrust Defense Counsel Into an Actual, Unwaivable Conflict Based on a Claim That Defense Counsel was a Joint Participant in Criminal Activity</u>

Another danger lurks regarding Mr. Jones' continued participation in this case: Spargo could, at a later date, claim (even falsely) that Mr. Jones knowingly participated in a corrupt act when Mr. Jones paid Spargo $10,000. To be clear, we have no evidence that Mr. Jones engaged in wrongdoing, and we have absolutely no reason to question Mr. Jones' integrity. We, however, feel duty bound to describe all the potential issues which could arise if Mr. Jones continues as defense counsel in this matter.

In support of his claim, Spargo could point to the fact that Mr. Jones was the only person to have actually paid Spargo $10,000 and that Mr. Jones had had cases in front of Spargo. <u>See, e.g.</u>, <u>Christiana v. Prime Medial Assoc, et al.</u>, RJI No. 19-02-0096 (N.Y. Sup. Ct. 2002); <u>Walker v. St. Peter's Hospital</u>, RJI No. 4798-03 (N.Y. Sup. Ct. 2003). The electronic court records for <u>Walker</u> show that a request for judicial intervention was filed in that case on November 5, 2003, two days before Mr. Jones made his $10,000 contribution to Spargo.[3]

Should Spargo make such an allegation, then all proceedings for which Mr. Jones served as sole defense counsel might be tainted irrevocably. For example, in <u>United States v. Williams</u>, 372 F.3d 96 (2d Cir. 2004), David Williams was represented during pretrial proceedings by counsel who was later determined to have been involved in criminal conduct with the defendant. Although the joint criminal activity was not charged, it was similar to that alleged in the

---

[3]The electronic records also show that the <u>Walker</u> case was transferred to another judge on February 9, 2005. The public file from the <u>Walker</u> case does not contain any orders that were signed by Spargo, meaning that Spargo may not have had any active role in the case at the time Mr. Jones paid $10,000.

7

indictment.  The defense attorney was disqualified prior to trial, and Williams was convicted following a jury trial in which Williams was represented by conflict free counsel. Notwithstanding that Williams' sentencing was handled by conflict free counsel, the Second Circuit vacated Williams sentence, agreeing with his argument that the conflict of interest affecting his prior attorney had been so severe that it had "effectively denied Williams the opportunity to enter into a cooperation agreement or other plea agreement with the government." Id. at 99.

Once an actual conflict is established, it is much easier for a defendant to attack any proceedings during which he was represented by conflicted counsel.  Unlike with the potential conflict situation, a defendant who is represented by counsel with an actual conflict need not prove prejudice.  Williams, 372 F.3d at 106.  Rather, in an actual conflict scenario, a defendant need only show that there was "some plausible alternative defense strategy or tactic ... and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests."  Williams, 372 F.3d at 106.  Williams was able to show that his defense attorney "failed to make any significant effort to negotiate a plea or cooperation agreement...." Id.  In vacating Williams' sentence, it made no difference that the prosecution in Williams would not have entertained plea offers - what mattered was that Williams' attorney had declined to pursue such offers and that this choice plausibly could have been connected with the attorney's self interest in not seeing his client/coconspirator cooperate with the government.

### III.  CONCLUSION

The Court must decide whether a conflict exists and whether it will be waivable "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context

when relationships between parties are seen through a glass, darkly.  The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials." Wheat v. United States, 486 U.S. 153, 162-63 (1988).  Given the problems of clarity, and to avoid a more significant disruption to the process at a later date, the government is compelled to seek Mr. Jones' disqualification now.  Accordingly, the government respectfully requests that the Court grant its motion to disqualify.

At a minimum, should the Court deem this conflict a waivable one, then the Government moves in the alternative for a Curcio hearing during which time defendant Spargo would be advised by conflict free counsel regarding the potential conflict and how it will limit his options in his defense.  Kliti, 156 F.3d at 155 ("A Curcio hearing is required whenever a defendant would forgo important testimony by his attorney because of his attorney's continued representation of him." (emphasis added)).

        Respectfully submitted,

        WILLIAM M. WELCH II
        CHIEF
        PUBLIC INTEGRITY SECTION

        s/ M. Kendall Day
        Richard C. Pilger, Senior Trial Attorney
        M. Kendall Day, Trial Attorney
        Public Integrity Section
        U.S. Department of Justice
        1400 New York Ave, NW Suite 12100
        Washington, DC 20005
        202-514-1412
        (F) 202-514-3003
        richard.pilger@usdoj.gov
        m.kendall.day@usdoj.gov

Date: January 21, 2009

**CERTIFICATE OF SERVICE**

      I, M. Kendall Day, certify that on January 21, 2009, electronic notice of the instant filing was served on the following persons via the CM-ECF system:

E. Stewart Jones, Jr., Esq.
bessetca@esjlaw.com
youngtr@esjlaw.com