UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------------------------------------------

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | Criminal No. 08-749 (GLS) |
| | Plaintiff, | Speedy Trial Act exclusion: |
| v. | | 18 U.S.C. §3161(h)(1)(F) |
| | | Time excludable: from the date of filing of this motion through the conclusion of any hearing or other prompt disposition of the motion. |
| THOMAS J. SPARGO, | | |
| | Defendant. | |

-------------------------------------------------------------------------------------------------------------------

## MEMORANDUM IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL

PRELIMINARY STATEMENT

I have represented the citizen accused, THOMAS SPARGO, since the commencement of hearings brought by the Commission on Judicial Conduct for the State of New York seeking to remove then Supreme Court Judge Spargo from the bench. When I was retained by then Judge Spargo to represent him at those hearings (he had been represented for several years prior to those hearings by other counsel) the counsel to the Commission, as the government prosecutors do here, sought to remove me as his attorney for reasons that are substantially identical to those asserted by the government here. That effort was rejected by the State Supreme Court, and the effort by the government prosecutors in this case should be rejected by this Court.

While we consent to a Curcio hearing, my perfectly legal and proper contribution to a perfectly legal and appropriate defense fund created for a judge does not create a conflict of interest between me as the judge's lawyer and the judge, nor does it warrant or justify depriving that judge of his constitutionalized right to counsel of his choice.

I am not a necessary or material witness.

Any testimony I might provide is not unique to me and is therefore not necessary. Any facts to which I might testify should the government request that testimony can be presented through stipulation. My testimony before the Commission on Judicial Conduct and at the hearing can be, to the extent it is relevant to this case, incorporated into stipulation form.

I am assuming that the government will provide the Court and me with those excerpts from interviews or testimony previously provided by me and Mr. Rosenblum that they would intend to use at a trial. Neither Mr. Spargo nor I are aware of any conflict within those testimonies that is prejudicial to Mr. Spargo or material to the issues in the case.

Moreover, there is nothing that can be advanced through any testimony of mine that is not provable by stipulation or other means, or by other evidence available on any issues to which the government may argue my testimony is relevant.

By no fair and reasonable interpretation of my testimony does that testimony have great significance or weight. It is not singularly supportive of any significant issue.

If anything, my testimony would be arguably supportive of Mr. Spargo as my contribution to the defense fund was without any contact, conversation or intervention by Judge Spargo. He and I never spoke about it before or after, and never had any contact at all about the defense fund itself, the funding for the defense fund, the soliciting of money for the defense fund, or my specific contribution to it until after I was retained by him to represent him at the hearing.

Mr. Spargo was fully aware and informed of, and read the arguments made by the Commission on Judicial Conduct in their effort to disqualify me in those proceedings and asked that I continue to represent him.

If not the intent of the government, the clear effect of the government's effort to disqualify me as Tom Spargo's counsel is to communicate the following, each of which is highly prejudicial to Mr. Spargo's fair trial rights:

1. That a legal defense fund is improper. It is not.

2. That it is improper to contribute to a legal defense fund. It is not.

3. That there is an implication of Tom Spargo's guilt of something if a legal defense fund was created. That is not true.

4. That Mr. Jones did something improper in contributing to the perfectly proper legal defense fund. He did not. It was perfectly ethical and proper to contribute to the legal defense fund.

5. That it is per se improper for one lawyer to solicit another lawyer to contribute to a judge's legal defense fund. It is not.

To allow the government's motion to succeed will forever embed the above in the consciousness of this case and irreparably undermine Mr. Spargo's ability to receive a fair trial.

Mr. Spargo has read and fully understands the arguments of the government prosecutors in this matter and asks that I continue to represent him.

To disallow my representation at this time would create an insurmountable hardship for Mr. Spargo in his effort to defend himself. I have been involved in his defense since the Commissions hearings, and it would be extremely difficult for anyone to enter the case at this point in time and to be able to work effectively with Mr. Spargo in his defense, particularly given the substantial volume of material generated by these matters that is necessary and relevant to the preparation of the defense for Mr. Spargo.

If there is a potential conflict it is waivable. If the Court finds there is a potential conflict Mr. Spargo will waive it.

POINT I

TOM SPARGO'S SIXTH AMENDMENT RIGHT
TO COUNSEL OF HIS CHOICE

"The right to be represented by counsel of one's own choosing has long been regarded as part and parcel of the 'fundamental' right to be heard through counsel." United States v. Curcio, 694 F.2d14, 22 (2d Cir. 1982). "[A]n accused has the fundamental right to be represented by counsel of his [or her] own choice." In re Grand Jury Subpoena Served Upon Doe, 759 F.2n 968, 972 (2d Cir. 1985). Any infringement of the right [to counsel of one's own choosing]...is only to be as a last resort. Id. at 975. "While not absolute, this right 'should not be unnecessarily obstructed by the court'." Curcio, 694 F.2d at 23 citing United States v. Schiner, 410 F.2d 337, 342 (2d Cir. 1969).

Consistent with the above principles, a lawyer may act as an advocate for his client and also testify "as to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case".
(22 N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.21(A)(4) (2001) (DR 5-102(a)(4)).

In seeking to remove me the government bears the burden of demonstrating specifically how and on what material issues I am a uniquely necessary witness and how my continuing representation of Mr. Spargo 1) may prejudice him, and 2) prejudice him in a substantial manner (Fulfree v. Manchester, 945 F.Supp. 768, 770 (S.D.N.Y. 1996)). See also, Lamborn v. Dittmer, 873 F.2d 522 (2d Cir. 1989) and Rice v. Baron, 456 F.Supp. 1361 (S.D.N.Y. 1978). In Rice, the court stated that "for testimony to be 'prejudicial' within the meaning of the disciplinary rule, the 'projected testimony of a lawyer or firm member must be sufficiently adverse to the factual assertions or account of events offered on behalf of the client, such that the bar or the client might have an interest in the lawyer's independence in discrediting that testimony." Id. at 1371.

4

In a relevant decision by the New York Appellate Division Third Department (People v. Brand, 13 A.D.3d 820, 787 N.Y.S.2d 169, decided on December 16, 2004), the Court, in a unanimous decision, concluded that a conflict of interest requiring withdrawal would exist where the lawyer representing the client "*may be called as a witness on a significant issue other than on behalf of the client . . . [and] it is apparent that the testimony is or may be prejudicial to that lawyer's client*". [emphasis added.]

In Brand the defendant had challenged his conviction of appeal by arguing that he was denied effective assistance of counsel when the County Court denied the defendant's lawyer's motion to withdraw from representation after that lawyer had been required to testify at a pre-trial Huntley hearing. There was a conflict between a testifying police officer's testimony and the defense counsel's handwritten notes, which led the people to call the defense counsel to testify regarding the accuracy of the notes. After testifying to, among other things, that his notes were inaccurate, the defense counsel, upon conclusion of the hearing, moved to withdraw from representation. The County Court Judge denied that motion. In affirming the denial the Appellate Division found that, on balance, defense counsel's testimony was not prejudicial to the defendant or against the defendant's interest and stated:

> "After undertaking employment, an attorney must withdraw from representation upon learning that he or she "may be called as a witness of a significant issue other than on behalf of the client . . . [and] *it is apparent that the testimony is or may be prejudicial to the client*" (Code of Professional Responsibility DR 5-102[D] [22 NYCRR 1200.21(d)] [emphasis added]"

**ARGUMENT**

I.      ANY CONFLICT OF INTEREST WOULD BE WAIVABLE

The Sixth Amendment right to counsel encompasses within it the defendant's right to counsel of his choice.  Wheat v. United States, 486 U.S. 153, 159 (1988).  Courts have "consistently recognized that the right of an accused who retains an attorney to be represented by that attorney is 'a right of constitutional dimension.'"  United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003) (quoting United States v. Wisniewski, 478 F.2d 274, 285 (2d Cir. 1973)).

If defense counsel is erroneously disqualified, the defendant's Sixth Amendment rights have been per se violated.  United States v. Golzalez-Lopez, 126 S. Ct. 2557, 2563 (2006) ("Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation").  As such, a defendant's "choice of counsel should not be unnecessarily obstructed by the court."  United States v. Cunningham, 672 F.2d 1064, 1070 (2d Cir. 1982) (citation omitted).

On a disqualification motion, a district court must first determine whether there is a conflict at all, and if so, whether it is an actual or potential conflict.  United States v. Fulton, 5 F.3d 605, 609 (2d Cir. 1993).  An actual conflict arises only when the interests of counsel and the client "diverge with respect to a material factual or legal issue or to a course of action."  Cuyler v. Sullivan, 446 U.S. 335, 356 n.3 (1980).  A potential conflict may arise "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future."  United States v. Kliti, 156 F3d 150, 153 n.3 (2d Cir. 1998).

Disqualification is mandated only if "the conflict is so severe that no rational defendant would waive it."  Id at 153. (citation omitted).  See also United States v. Lussier, 71 F.3d 456, 461 (2nd

6

Cir. 1995) (disqualification mandated where the conflict "is so egregious that no rational defendant would knowingly and voluntarily desire the attorney's representation . . ."). For any lesser conflict, disqualification is not mandated, and instead the Court should conduct a hearing pursuant to the procedure set out in United States v. Curcio, 680 F.2d 881 (2d Cir 1982), to determine if the defendant may make a knowing and intelligent waiver of the conflict. Kliti, 156 F.2d at 153 ("If it is a lesser conflict, the court must conduct a Curcio hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation.") (citation omitted).

As the Second Circuit has cautioned, mandatory disqualification is an "extreme" remedy, and district courts should refuse to entertain waivers of conflicts only where the conflict will per se interfere with the defendant's right to the effective assistance of counsel:

> [I]f the court discovers no genuine conflict, it has no further obligation. At the other end of the spectrum, if the court determines that counsel has an actual conflict that is so severe as to indicated per se that the rendering of effective assistance will be impeded, or is analogous to such a conflict in breadth and depth, the court must . . .disqualify counsel. And if, between these two extremes, the court determines that the attorney suffers from a lesser [actual] or only potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice.

Perez, 325 F.3d at 125 (internal quotation marks and citations omitted).

In assessing whether to accept a waiver, a court should take into account "whether disqualifying the defendant's chosen counsel would create 'real prejudice' to the defendant based on the length of the representation and/or counsel's familiarity with the case." United States v. Stein, 410 F.Supp. 2d 316, 328 (S.D.N.Y. 2006) (quoting Cunningham, 672 F.2d at 1071). In Stein, for example, Judge Kaplan accepted a defendant's waiver of a conflict on account of his counsel's prior joint representation of two co-conspirators, one of whom had since pleaded guilty. Judge Kaplan

found that disqualification "would deprive [the defendant] of the benefit of two years of preparation" by his attorneys. Id. at 328-29.

A court should also take into account a defendant's agreement to remedial measures, such as the limitation of testimony to avoid references to the attorney's participation in the events at issue, limitations on cross-examination or the use of independent counsel to conduct particular cross-examinations. In United States v. Jones, 200 F.2d 512 (2nd Cir. 1990), for example, the Second Circuit held that no disqualification was required of an attorney who submitted a pre-indictment proffer letter to the government, and the court noted that the attorney was not a silent witness because the attorney's role in preparing the letter was never mentioned to the jury. The court in Jones cited United States v. Diozzi, 807 F.2d 10, 13 (1st Cir. 1986), which held that the defendants' attorneys had been improperly disqualified on account of their submission of a pre-indictment memorandum protesting their client's innocence, particularly where the defense had offered to stipulate to facts to avoid need for attorney testimony. Courts within the Second Circuit have affirmed the use of such measures, see, e.g., Perez, 325 F.3d at 125-128 (affirming district court's denial of two motions to disqualify defense counsel where the government had stated that it planned to call defense counsel as a rebuttal witness to testify at trial against the defendant, and later as a witness to an allegedly false proffer session statement, and stating that "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government") citing Cunningham, 672 F.2d at 1073); United States v. Leslie, 103 F.3d 1093, 1098 (2nd Cir. 1997) (affirming district court finding that former client's waiver of any attorney-client privilege that might otherwise have hindered defense counsel's cross-examination of former client, if former client should

take the stand, obviated the need for a Curcio hearing, and noting that even if there were a potential conflict, no prejudice was shown); Stein, 410 F.Supp. 2d at 329 (holding that defendant could waive conflict arising from his counsel's prior representation of prospective government witnesses where the defendant was willing to forego counsel's right to cross-examine the witnesses and from discussing those witnesses with counsel for co-defendants and with any independent counsel retained to conduct cross-examination), as have courts outside the Second Circuit, see, e.g., United States v. Garcia, 447 F.3d 1327, 1337 (11th Cir. 2006) (holding that district court did not abuse discretion by not holding a second hearing on whether to disqualify defense counsel where defendant had knowingly and intelligently waived conflict following a thorough pretrial hearing); United States v. Martinez, 143 F.3d 1266, 1268-1269 (9th Cir. 1998) (holding waiver of conflict-free counsel valid where the court engaged in an "extensive colloquy" with the defendant, and distinguishing Wheat on the grounds that there was no showing in that case that defense counsel's conflict "had any impact on his representation at all, much less that it threatened to violate the Sixth Amendment rights").

Indeed, in Kliti, the Second Circuit reversed the defendant's conviction because the district court had failed to conduct a Curcio hearing, and the Second Circuit instructed the district court whether the defendant's consent to limitations on cross-examination could render any conflicts waivable. 156 F.3d at 156 n.7.

The government's suggestion that peripheral and de minimus inconsistencies between my testimony and that of Mr. Rosenblum in some fashion creates a conflict with Judge Spargo and my representation of him is erroneous and illogical, and on its face suggests only the remotest possibility of a potential for conflict, a conflict which Judge Spargo has previously fully waived, waived today,

and will waive formally before this Court.

The government's suggestions of a potential conflict based upon their arguments in subparagraphs "A" (pages 4 & 5), "B" (pages 5 & 6), footnote "2" (page 6) and subparagraph "C" (pages 7 & 8) are preposterous and will be more fully addressed at oral argument.

POINT II

THE COURT SHOULD ORDER THE GOVERNMENT
TO PRODUCE ALL MATERIAL IN ITS POSSESSION
RELATED TO THE CONTENTIONS THE
GOVERNMENT HAS MADE IN SUBDIVISIONS
"A", "B", FOOTNOTE "2" AND SUBDIVISION "C"
OF ITS BRIEF

At the appearance before this Court on the government's motion on March 5, 2009, the Court should direct the government to provide discovery to counsel of all material in the government's possession relative to its arguments contained in the above identified sections of the government's brief.

The government references testimony of Rosenblum, Blatchley, and court documents relating to this firm and then Judge Spargo. Upon information and belief, Mr. Rosenblum did not testify before the Grand Jury that indicted Mr. Spargo, but rather was dissuaded from doing so and reached an accommodation or agreement pursuant to which he was interviewed at length by the government.

All information with respect to Mr. Rosenblum should be disgorged by the government now in order to enable the claimed conflict between Mr. Rosenblum, Mr. Spargo and Mr. Jones to be thoroughly and honestly explored and addressed.

Failure to have complete knowledge of the claimed underpinnings of the government's position undermines our ability to fully and accurately access that position and respond to it.

All information in the possession of the government with respect to Mr. Rosenblum is directly and critically relevant to an evaluation of the issues raised by the government's own motion, and to a fair determination of the critical issue of Mr. Spargo's right to counsel of his choice.

DATED:    February 16, 2009

                                                Respectfully submitted,

                                                E. STEWART JONES, PLLC

BY:    /s/ E. Stewart Jones, Jr.
       Attorney for Defendant
       Office & P.O. Address
       28 Second Street
       Troy, New York   12180
       (518) 274-5920
       info@esj.law.com